In the Matter of ELLIOT S. BENEDICT et al., Appellants, against GEORGE R. LUNN et al., Commissioners of the Land Office of the State of New York, Respondents.

State — grant — real property — title — stare decisis — decisions of appellate courts interpreting public records must be followed — application for repayment of purchase money for lands under water granted by State, on ground of failure of title — erroneous exclusion of record of decision of courts as to Colonial grants of lands in question — section 6 of Public Lands Law providing for repayment on failure of title to lands granted by State applicable to land under water — grant subject to be divested by entry of State for failure of conditions conveys fee which remains in grantee until divested — nothing lost by patentee by failure to exercise right which never existed — rights not affected by conveyance of uplands with reservation of claim against State.

1. A decision of the Appellate Division interpreting public records affirmed by the Court of Appeals, even though the State was not a party thereto, cannot be ignored by this court and should not be ignored by the Commissioners of the Land Office upon an application by a patentee of lands under water, under section 6 of the Public Lands Law (Cons. Laws, ch. 46), for repayment of the purchase money on the ground that title thereto had failed.

# 374 MATTER OF BENEDICT v. LUNN.

2. The exclusion, therefore, on the hearing, of all reference to the case, in so far as it applied to findings as to Colonial grants of the lands in question, was error, no objection having been made by the State to the record as being an improper way to prove such grants. The State is not bound by the decision in question and may prove any claim it may have, but until it does so the decision is an authority which must be followed in the interpretation and construction of the Colonial grants.

3. A contention that section 6 of the Public Lands Law, which provides for repayment of the purchase money with interest upon failure of title to lands granted by the State, does not relate or apply to lands under water, cannot be sustained. The act, in its various sections, refers to all lands owned by the State, both uplands and lands under water, unless the lands under water are expressly excepted.

4. Nor can a contention that the letters patent did not purport to grant anything more than a license or franchise and not a fee title be sustained, where by its terms the lands under water were given and granted to the patentee, his heirs and assigns for the purpose of filling in such lands, reserving to the State the right to enter on and use such parts not actually occupied by substantial structures or which have not been actually filled in and providing the grant shall become void unless the improvements are made within five years. By such a grant the fee title was conveyed subject to be divested by the entry of the State for non-performance of the condition. The fee title, however, remained in the grantee until divested by action of the State. (*People* v. *Wainwright*, 237 N. Y. 407; *Appleby* v. *City of New York*, 271 U. S. 364, followed.)

5. Assuming that title of the city of New York to the lands under water is at most a mere naked ownership of the underlying soil, it was this land which the State granted by its patent and which it assumed to control and own so as to permit others to fill in. Claimants' rights are based upon the failure of the State to have any title to grant. Nothing could be lost, therefore, by the patentees, by failure to exercise a right which never existed.

6. Nor were their rights affected by conveyance of the uplands. If they had no rights in the land under water, they could convey none. All they had was the right to claim their money back and this they reserved in their deeds of conveyance.

*Matter of Benedict* v. *Lunn*, 214 App. Div. 741, reversed.

(Argued January 18, 1927; decided February 23, 1927.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial

department, entered December 12, 1925, which unanimously confirmed, on certiorari, a determination of the Commissioners of the Land Office, denying an application under section 6 of the Public Lands Act, for refund of moneys paid to the State.

*Ellery O. Anderson, F. K. Pendleton* and *Milton C. Baldridge* for appellants.　There was a failure of title in the State to the lands granted by the letters patent dated February 10, 1908.　(*People ex rel. Hall* v. *Woodruff,* 57 App. Div. 342; *Wheeler* v. *State of New York,* 190 N. Y. 406; *City of Buffalo* v. *Erie R. R. Co.,* 83 Misc. Rep. 144; *Starke-Belknap* v. *New York Central R. R. Co.,* 197 App. Div. 249.)　Section 6 of the Public Lands Law applies to lands under water.　(*People* v. *Steeplechase Park Co.,* 218 N. Y. 459; *People* v. *Wainwright,* 237 N. Y. 407; *Village of Hudson Falls* v. *State of New York,* 111 Misc. Rep. 304.)　The letters patent in question purported to grant a fee, subject to a right of re-entry for breach of a condition subsequent, and not merely a license or franchise.　(*Appleby* v. *City of New York,* 235 N. Y. 351; *Coxe* v. *State,* 144 N. Y. 396; *Matter of Long Sault Development Co.,* 212 N. Y. 1; *Illinois Central Railroad Co.* v. *Illinois,* 146 U. S. 387.)　The failure to fill in lands under water does not affect petitioners' claim.　(*Tiffany* v. *Oyster Bay,* 234 N. Y. 15; *Nicoll* v. *R. R.,* 12 N. Y. 121.)

*Albert Ottinger, Attorney-General* (*Anson Getman* and *Eugene L. Brisach* of counsel), for respondents.　The letters patent issued to the predecessors of petitioners did not purport to grant anything more than a license or franchise and not a fee title.　(*Coxe* v. *State,* 144 N. Y. 396; *Matter of Long Sault Development Co.,* 212 N. Y. 1; *Illinois* v. *Illinois Central R. R. Co.,* 146 U. S. 387; *City of New York* v. *Appleby,* 235 N. Y. 351; *Matter of City of New York* [*Harlem River Speedway*], 168 N. Y. 134; *Hinckley* v. *State,* 202 App. Div. 570; *People*

v. *Baldwin,* 197 App. Div. 285; *First Construction Co.* v. *State,* 221 N. Y. 295; *People* v. *Traktman,* 201 App. Div. 864; 235 N. Y. 541; *Parmelee* v. *O. & S. R. R. Co.,* 7 Barb. 599; 6 N. Y. 74; *Towle* v. *Remsen,* 70 N. Y. 303; *Allegany Oil Co.* v. *Bradford,* 21 Hun, 26; *Wells* v. *Smith,* 7 Paige, 22; *Newcomb* v. *Newcomb,* 12 N. Y. 603; *Archibald* v. *N. Y. Cent. R. R. Co.,* 157 N. Y. 574.) There has been no adjudication, binding upon the State, that its title has failed. (*Mecox Bay Co.* v. *Huntington,* 116 N. Y. 1; *Loundes* v. *Huntington,* 153 U. S. 1; *Howell* v. *Jessup,* 160 N. Y. 249; *Grace* v. *Hempstead,* 166 App. Div. 844; *Tiffany* v. *Oyster Bay,* 209 N. Y. 1; *Harway Impt. Co.* v. *Partridge,* 203 App. Div. 174; *People ex rel. Palmer* v. *Travis,* 223 N. Y. 150; *Waddell* v. *Peters,* 16 Pet. 367.)

CRANE, J. The claimants or their predecessor received letters patent from the State of New York, dated February 10, 1908, conveying certain lands under the waters of Westchester creek, in front of and adjacent to their upland, in the borough of The Bronx, in the city of New York. Alleging that the title to this land had failed, they made application under section 6 of the Public Lands Law (Cons. Laws, ch. 46) to the Commissioners of the Land Office for a direction to repay to them the purchase moneys. The principal facts were stipulated. The application was denied, and the Appellate Division in certiorari proceedings has affirmed the determination of the Commissioners of the Land Office.

The lands in question were the subject of litigation in *Bliss* v. *Benedict* (202 App. Div. 115; affd., 234 N. Y. 596). That was an action brought to partition the uplands and the lands granted under this patent by the State. The city of New York having been made a party to the action, claimed the land under water, through patents to the town of Westchester, from Governor Nicolls, dated February 15, 1667, and from Governor

Dongan, dated January 6, 1686. The city claimed this title as successor to all the rights of the town of Westchester. If it were a fact that these Colonial grants had given to the town of Westchester this land under water, then of course when the State of New York came into existence, it had no rights in these lands as successor to the Crown which it could subsequently convey to James H. Benedict by its letters patent, February 10, 1908. The Supreme Court had before it in the trial of *Bliss* v. *Benedict* these Colonial grants, and so far as the parties there in litigation were concerned, was called upon to determine the boundaries of the lands and lands under water which had been granted. It determined that these Colonial grants included all the rivers, bays and creeks north of the line of the sound, for the reason that the patent said: " Southward they are bounded by ye Sound or East River." What was the line of the sound at this place, to which these patents referred? The Supreme Court by its decision drew a straight line between the two headlines known as Clason's point and Old Ferry point. North of this line was included in the Colonial grants to the town of Westchester. South of this line was the sound. The property in question in this proceeding is north of this boundary line.

The stipulation of facts, as prepared for this proceeding, contained a statement regarding this *Bliss* case and the findings of the Appellate Division to the effect that the city of New York owned the land under water here in question, and not the State of New York; and that these claimants had no title thereto. On the hearing before the Land Commissioners these facts stipulated about the *Bliss* case were excluded, as well as the record of the *Bliss* case containing all the exhibits. It was excluded, no doubt, under the opinion of the Attorney-General to the effect that the State of New York had rights in the waters, even if it had no rights to the land under water. Exactly what this claim is I have been unable for myself

to determine. I take it, however, that there has been no misunderstanding about the *Bliss* case, and that the Supreme Court has determined the limitations and boundaries of the Colonial grants involved. While the State of New York was not a party to that litigation and, therefore, not bound by the decision, yet the *Bliss* case is an authority to be followed on the same facts until something appears to justify a different conclusion. We cannot ignore, neither should the Commissioners of the Land Office, a decision interpreting public records.

If we consider the exclusion on the hearing of all references to the *Bliss* case as leaving out of the record any evidence of the title of the city of New York, and so any proof of failure of title in the claimants, the exclusion was error in so far as it applied to the Colonial grants. There was no objection made by the State to the record in the *Bliss* case as being an improper way to prove the Colonial grants. Seldom, if ever, are certified copies of these records required. The objection made was that these were irrelevant and immaterial, not that they were incompetent. The Colonial grants, through which the city of New York claimed its title, should have been received in evidence, and their exclusion, to which an exception was taken, presents reversible error. I take it, however, from the brief of the State, that this case turns upon no such technical point; that the Attorney-General recognizes the force and effect of the *Bliss* case so far as the facts therein stated are applicable; and that his only point is that the State, conceding the correctness of that decision, is not bound by it, and may present any other claims it may have to these lands under water.

We agree with the Attorney-General that the State was not bound by the decision in *Bliss* v. *Benedict,* and that it is open to the State to prove any claim it may have. But until it does so, the decision in that case is an authority which must be followed in the interpretation and construction of these Colonial grants. We

affirmed the decision of the *Bliss Case* (234 N. Y. 596), and we must hold by it until the State produces some evidence, or presents some reason to show that its conclusion was wrong.

The Attorney-General in his argument in this case, as well as the Commissioners of the Land Office, have ruled out the claimants on points of law, and not upon title in the State. I will consider these points as made.

*First.* It is said that section 6 of the Public Lands Law does not relate or apply to lands under water. With this we cannot agree. Section 6 reads:

" Whenever the title of the state to lands granted under its authority fails, and a legal claim for compensation on account of such failure is preferred by any person entitled thereto, the commissioners of the land office shall direct the payment of the original purchase-moneys which may have been paid to the state by such person, with interest at the rate of six per centum from the time of such payment, to be paid out of the treasury on the warrant of the comptroller."

The Attorney-General says that the lands referred to are uplands and not lands under water. The act, however, in its various sections refers to all lands owned by the State, both uplands and lands under water, unless the lands under water are expressly excepted. Thus, in section 12, we find a reference to all patents of lands issued before July 11, 1881, " except lands under water in the bay or harbor of New York or adjacent thereto." These " lands," therefore, include lands under water with the exception applying only to New York bay and harbor. Section 30, dealing with unappropriated State lands, specifically excepts lands under water, the disposition of which is governed by another article. I see no reason for the distinction attempted by the Attorney-General. The act clearly includes lands under water unless an exception is made thereof, or the context shows that they should not be included.

*Second.* The State claims that the letters patent of February 10, 1908, did not purport to grant anything more than a license or franchise, and not a fee title. The letters patent read as follows:

" KNOW YE, that pursuant to a resolution of the Commissioners of our Land Office, dated the fourteenth day of November, 1907, and for the purpose of granting and conveying a restricted beneficial enjoyment in and to the lands under water and between high and low water mark hereinafter described, to James H. Benedict the owner of the adjacent uplands, and for no other object or purpose whatsoever, and with the reservations and upon the conditions hereinafter expressed, we have given and granted, and by these presents, do give and grant unto James H. Benedict, his heirs and assigns the land under water, and between high and low water mark described as follows,    *    *    *

" These letters-patent are issued pursuant to a resolution of the Commissioners of the Land Office for the following purposes, to wit: To fill in the lands under water herein granted.

" Excepting and reserving to al. and every the said people, the full and free right, liberty and privilege of entering upon and using all and every part of the above-described premises in as ample a manner as they might have done had this power and authority not been given, always excepting such parts thereof as are actually occupied and covered by structures, docks or buildings of a substantial character, and such parts of said premises as have been actually filled in and reclaimed from low or marsh land; provided that unless the improvements above named are completed within five years from the date of these presents this grant shall cease and determine and become null and void."

Under similar grants, with like reservations, it has been held that fee title was conveyed which might be divested by the entry of the State for non-performance of

the condition. The fee title, however, remained in the grantee until divested by action of the State. (*People* v. *Wainwright,* 237 N. Y. 407; *Appleby* v. *City of New York,* 271 U. S. 364.)

*Third.* The State further says that any title or right of the city of New York in and to the lands under water, the subject of this proceeding, is at the most a mere naked ownership of the underlying soil. Granting that this be so, it was this land under water which the State granted by its patent, and which it assumed to control and own so as to permit others to fill it in. The claimant's rights are based upon the failure of the State to have any title to grant either a fee or privileges based on a fee.

*Fourth.* It is further said that the patentees under the letters patent in question received a valuable right which has lapsed, not because of failure of title, but through their own failure to perform the stated conditions. Naturally, if the State had no rights to grant, and no title justifying its grantee in using the property to fill in, nothing could be lost for failure to exercise a right which never existed.

And lastly, it is said that the claimants, in granting away the upland, could not reserve their rights in the land under water. This would be true if they had any rights in the land under water. This proceeding is based upon the fact that they had no such rights to convey, but that all they had was the right to claim their money back under section 6 of the Public Lands Act, and this they reserved in their deeds of conveyance.

For the reasons here stated the order of the Appellate Division should be reversed and the determination of the Commissioners of the Land Office annulled and a rehearing ordered, with costs in the Appellate Division and in this court.

CARDOZO, Ch. J., POUND, ANDREWS and LEHMAN, JJ., concur; KELLOGG, J., not sitting.

Ordered accordingly.